UNITED STATES *v.* KEER, MAURER COMPANY

**No. 8095.—**

Entry No. 8018.

## Second Division, Appellate Term

(Decided March 3, 1952)

*Charles J. Wagner,* Acting Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellant.

*Eugene R. Pickrell* (*Michael Stramiello, Jr.,* of counsel) for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge:   This is an application for a review of the decision and judgment of the trial court filed under the provisions of title 28 U. S. C. sec. 2636 (a).   The merchandise involved consists of thallium sulphate imported from Germany, which was entered at Philadelphia at 18 reichsmarks per kilo, less freight, insurance, and consular fee, on the basis of export value, and was appraised on the basis of foreign value at 25 reichsmarks per kilo, net weight, under section 402 (d) and (c), respectively, of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

In its original decision, 23 Cust. Ct. 336, Reap. Dec. 7764, the trial court held that the appellee herein had not presented sufficient evidence to establish a *prima facie* case, and consequently affirmed the appraised value.   A rehearing was thereafter granted, and when the case was again called for trial, additional evidence was offered by counsel for appellee herein.

At the original trial, the plaintiff below offered the testimony of two witnesses and one affidavit, which was marked collective exhibit 1, while the defendant in the court below offered two Treasury attachés'

reports, which were marked defendant's exhibits 2 and 3. Commenting upon this evidence, the trial court observed:

Plaintiff's oral testimony has little, if any, bearing on the real issues. The president of Chemical Marketing Co., Inc., importer of the shipment in question, merely stated that the said corporation purchased the present merchandise. A Government investigator identified as his own work, translations from German into English of parts of sales documents attached to plaintiff's affidavit.

Substantially all of plaintiff's proof is embodied in the affidavit, plaintiff's collective exhibit 1, executed by a clerk employed by the foreign shipper at the time of exportation of the merchandise in question, and who made delivery of the present shipment to the importer corporation. The clerks who made the sale of the product under consideration "are dead or have retired."

Affiant's testimony covers the period from July 1, 1938, to July 1, 1939, when he "was familiar with the production and sales of thallium sulphate sold for home consumption in Germany and for Export to the United States." Throughout the said period, thallium sulphate, such as or similar to that under consideration, was freely offered for sale and sold to all purchasers in the principal market of Beuel am Rhein, Germany, both for home consumption and for export to the United States.

The record, however, is not satisfactory concerning the matter of "usual wholesale quantities," an essential element for proper determination of statutory foreign or export value.  * * *

With reference to the additional evidence offered at the second trial, the court below held that:

Plaintiff's supplemental affidavit, exhibit 4, offered at the trial on rehearing, is directed to the matter of usual wholesale quantities, an element of proof which was found to be rather confusing and "not satisfactory" in the original presentation of the case.

This clarifying evidence gives a materially different aspect to the record, which is now sufficient to support plaintiff's entered value. Presented in the form of an affidavit, it gives positive and definite meaning, heretofore vague and indefinite to the witness' expression, "usual quantity," used in his initial affidavit, collective exhibit 1, with reference to sales in the foreign market for home consumption and for export to the United States. The later affidavit, exhibit 4, supra, establishes the wholesale quantities for the present merchandise to be 50 to 100 kilograms on sales in Germany for home consumption, and 150 to 300 pounds (68 to 136 kilograms) on sales for export to the United States.

Analyzing the records of sales in wholesale quantities, as set forth in the affidavit, collective exhibit 1, on merchandise sold for home consumption, I find that the major portion of such sales was in 100 kilograms, which, therefore, is the usual wholesale quantity in determining the issue before me. *Jenkins Brothers* v. *United States*, 25 C. C. P. A. 90, T. D. 49093.

The record fully supports the above holding of the trial court that 100 kilograms is the quantity in which the major portion of the sales was made for home consumption in Germany of thallium sulphate such as or similar to the thallium sulphate here involved at or about the date of exportation of the instant merchandise, and said holding is hereby affirmed.

The record also establishes that the wholesale quantities in which thallium sulphate, such as or similar to that here involved, when sold

for export from Germany, were from 68 to 136 kilograms. Following the rule laid down in the *Jenkins Brothers* case, *supra*, we find that the usual wholesale quantity in which such or similar merchandise was sold in Germany for export was 136 kilograms. All of the sales in quantities of 136 kilograms were made at reichsmarks 18, and this confirms the holding of the trial court " * * * that such or similar merchandise was not offered for sale or sold for export to the United States at any higher price" than the price at which it was sold for home consumption in Germany.

All of the findings of the trial court are fully supported by the record herein, and, as stated in its decision:

There is no contradiction to these conclusions in evidence offered by defendant. On the contrary, some support therefor can be found in the customs agents' reports, exhibits 2 and 3.

Upon a full consideration of the record before us, we therefore find as fact:

1. That the involved merchandise consists of thallium sulphate exported from Germany and entered at the port of Philadelphia.

2. That Beuel am Rhein, Germany, was the principal market in which such or similar thallium sulphate was sold on or about the date of exportation of the involved merchandise.

3. That the wholesale quantities in which thallium sulphate, such as or similar to that here involved was usually sold, were 50 to 100 kilograms on sales in Germany for home consumption; and 150 to 300 pounds (68 to 136 kilograms) on sales for export to the United States.

4. That the price at which thallium sulphate, such as or similar to that here involved, was sold for home consumption in Germany in the principal market and in the ordinary course of trade at or about the date of exportation of the involved merchandise in wholesale quantities was reichsmarks 18 and reichsmarks 18.75.

5. That the price at which thallium sulphate, such as or similar to that here involved, was sold in the principal market of Germany and in the ordinary course of trade at or about the date of exportation of the involved merchandise in wholesale quantities for exportation to the United States was reichsmarks 18 and reichsmarks 19.

We therefore conclude as matter of law:

1. That the usual wholesale quantity in which thallium sulphate, such as or similar to that here involved, was sold for home consumption in Germany in the principal market and in the ordinary course of trade was 100 kilograms.

2. That the usual wholesale quantity in which thallium sulphate, such as or similar to that here involved, was sold in Germany for exportation to the United States in the principal market and in the ordinary course of trade was 136 kilograms.

3. That the price at which thallium sulphate, such as or similar to that here involved, was sold in Germany for home consumption to all purchasers in the principal market, in the usual wholesale quantity and in the ordinary course of trade, at or about the date of exportation of the involved merchandise, was reichsmarks 18, and said merchandise was not sold or offered for sale for exportation to the United States at prices which were higher.

The judgment of the trial court is accordingly affirmed. Judgment will be rendered accordingly.